**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of FIMI-Finanziaria Immobiliare Italia S.R.L. and FINAB 43 S.R.L. IN LIQUIDAZIONE,<br><br>Petitioners,<br><br>For an order to conduct discovery for use in a foreign proceeding. | CIVIL ACTION NO. 19-MC-584(PKC) |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE THE COURT'S DECEMBER 20, 2019 ORDER AND QUASH SUBPOENAS ISSUED PURSUANT TO THE ORDER


**GREENBERG TRAURIG, LLP**
Cory Mitchell Gray, Esq.
Samantha Varsalona, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey, 07932
Tel: (973) 360-7900
Fax: (973) 301-8410
*Attorneys for Movants*
*Giuseppe Rossi, Steven Della Salla*
*Andrus Laurits, and Bizzi & Partners Development LLC*

On the Brief:
Cory Mitchell Gray, Esq.
Samantha Varsalona, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT AND FACTS RELEVANT TO THE MOTION1

ARGUMENT ....................................................................................................................4

THE ORDER SHOULD BE VACATED AND THE SUBPOENAS QUASHED........................4

A. The Order Is Not Authorized by 28 U.S.C. Section 1782 ..............................................4

B. The Discretionary Factors Favor the Movants.....................................................................9

CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied–Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)....................11

*In Re Ex Parte Application of China Petrochemical Development Corporation*,
No. 17-MC-00157, 2017 WL 10841339 (D. Conn. Nov. 28, 2017) ....................8

*In Re Application of Hanwei Guo*,
No. 18-MC-56, 2019 WL 917076 (S.D.N.Y. Feb. 25, 2019)....................6, 7

*AT&T Technologies, Inc. v. Communications Workers of Am.*,
475 U.S. 643 (1986)....................11

*Brandi–Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)....................4

*In re Children's Inv. Fund Found. (UK)*,
2019 WL 400626 (S.D.N.Y. Jan. 30, 2019) ....................6

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....................11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)....................6, 7, 8

*In re Kleimar N.V.*,
220 F. Supp. 3d 517 (S.D.N.Y. 2016)....................6

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)....................5, 9

*Monsanto v. United States*,
348 F.3d 345 (2d Cir. 2003)....................7

*NBC v. Bear Stearns*,
165 F.3d 184 (2d Cir. 1999).................... *passim*

*Oldroyd v. Elmira Sav. Bank, FSB*,
134 F.3d 72 (2d Cir.1998)....................11

*In re Petrobras Securities Litigation*,
393 F. Supp. 3d 376 (S.D.N.Y. 2019)....................7

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
376 F.3d 79 (2d Cir. 2004)....5

**Statutes**

9 U.S.C. § 7....11

28 U.S.C. § 1782.... *passim*

Code of Civil Procedure, Art. 118....10

Code of Civil Procedure (the "CPC")....10

**Other Authorities**

Cecilia Carrara, et al., Arbitration Procedures and Practice in Italy:
Overview (Thomson Reuters 2020) .... 2

## PRELIMINARY STATEMENT AND FACTS RELEVANT TO THE MOTION

On December 19, 2019, Petitioners filed an application (the "Application") for entry of an order granting discovery for use in a foreign or international tribunal, which application was granted by the Court on December 20, 2019. (ECF No. 7). On January 18, 2020, Petitioners caused a subpoena *ad testificandum* to be served upon Steven Della Salle for a deposition on January 31, 2020 (attached as **Exhibit A** to the Certification of Cory Gray ("Gray Cert.") (ECF No. 8). On January 8, 2020, Petitioners caused a subpoena *ad testificandum* to be served upon Bizzi & Partners Development LLC for a deposition on January 31, 2020 (attached as **Exhibit B** to the Certification of Cory Gray ("Gray Cert.") (ECF No. 9).

Petitioners' application to the Court was supported by the Declaration of Cino Raffa Ugolini dated December 19, 2019, ("Ugolini Dec.") (ECF. No. 5), in which Mr. Ugolini represented to the Court, *inter alia*., that the requested discovery would involve a to-be-filed "arbitration proceeding governed by the rules of civil procedure in Italy before a sole arbitrator [errant repetitive text omitted] appointed by the President of the Court of Milan in compliance with Italian law, arbitration provided for by the By-laws of 400 Fifth Avenue Holding SpA (the "Italian Action")." Ugolini Dec., ¶ 2. Petitioners also submitted a memorandum of law ("Petitioners' Memorandum"). The Ugolini Declaration omitted critical facts regarding both the arbitration process and civil procedure in Italy, as well as the contents of the By-Laws (the "By-Laws") of 400 Fifth Avenue Holding, SpA ("400FAH"); the Petitioners' Memorandum failed to inform the Court of relevant Second Circuit and Southern District case law holding that the Court lacks the authority to grant the relief requested by the Petitioners.

For example, the Ugolini Declaration did not inform the Court that under the By-Laws, the to-be-filed arbitration will be a purely private arbitration and the only judicial involvement

will be the appointment of the arbitrator by the President of the Court of Milan. This process is not unusual in Italy; indeed, the rules of the National and International Chamber of Arbitration of Milan ("CAM") (a private arm of the Chamber of Commerce in Italy which acts in the same role as JAMS and the AAA in the United States) expressly provide that unless the parties agree in advance to the arbitrator or to the means of appointment of the arbitrator, the arbitrator is appointed by the President of the court where the arbitration is seated, in this case, Milan. *See* Cecilia Carrara, et al., Arbitration Procedures and Practice in Italy: Overview (Thomson Reuters Practical Law UK (2020)). But the Court of Milan's involvement in the arbitration will end with the appointment of the arbitrator which thereafter will proceed as a purely private arbitration.

Further, the Ugolini Declaration fails to inform the Court that the By-Laws agreed to by the shareholders of 400FAH – not Italian law – is the basis for utilizing the rules of civil procedure in the private arbitration. *See* Section 22 of the By-Laws of 400 Fifth Avenue Holding, SpA, attached as **Exhibit C** to Gray Cert. The agreement evidenced in the By-Laws does not involve the judicial system in Italy. Rather, the parties have merely agreed to use those rules of civil procedure for the conduct of their private arbitration. *See* Exhibit C. Finally, the Ugolini Declaration failed to inform the Court that under the Italian rules of civil procedure, the parties have no right (but may seek permission) to conduct discovery, and even if the request for discovery is granted, a third party can decline to provide it, subject to the payment of a modest fine. *See* footnote 5, *infra*.

In addition, the Petitioners' Memorandum, though citing to a 1996 Second Circuit case for the proposition that a body exercising an 'adjudicative' function qualifies as a 'foreign or international tribunal' under the statute – failed to inform the Court of a subsequent 1999 Second Circuit case holding that a private arbitration is not a 'foreign tribunal' for purposes of the statute.

Nor did Petitioners inform the Court of two 2019 Southern District cases that followed the Second Circuit's twenty-year old precedent in holding that a private arbitration held in a foreign country is not a 'foreign or international tribunal' that would support the grant of a petition pursuant to 28 U.S.C. § 1782.[1] Instead, the Petitioners' Memorandum stated – without citing support – that the arbitration would be conducted under the Italian Civil Procedure, thereby suggesting that the arbitration was essentially a judicial proceeding.

Simply put, the conclusion to which the Petitioners' Application tried to lead the Court, namely, that the arbitration in Italy was essentially a judicial proceeding in connection with which this Court had the authority to permit the issuance of subpoenas, is not supported by the facts or the applicable law.

[1] There are, to be sure, two Southern District cases which have held that a Supreme Court decision in 2004 abrogated the 1999 Second Circuit case. While this issue is discussed *supra*, the more recent and better analyzed Southern District cases in 2019 adhere to the Second Circuit precedent in holding that a foreign private arbitration is not a 'foreign tribunal' for purposes of the statute.

## ARGUMENT

## THE ORDER SHOULD BE VACATED AND THE SUBPOENAS QUASHED

As shown in detail below, the record before the Court on Petitioners' Application was notable for its omissions and its partially true statements. Based on that self-created record, the Petitioners made their case that this Court was authorized to issue the Order pursuant to 28 U.S.C. § 1782 (the "Statute"). In fact, as demonstrated by the most recent Southern District cases applying Second Circuit precedent, it was not so authorized. The contemplated proceeding in Milan, Italy is a private arbitration, not a judicial 'tribunal', and the Court did not have the authority to issue the Order in connection with a foreign private arbitration.

Further, even if the Court did have the statutory authority to enter the Order, it should exercise its discretion to vacate the order because the factors to be considered by the Court in determining whether the requested discovery is appropriate weigh heavily in favor of the Movants. The Order should be vacated and the subpoenas issued pursuant to that Order should be quashed.

### A. The Order Is Not Authorized by 28 U.S.C. Section 1782

As applicable here, 28 U.S.C. § 1782 states: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a *foreign or international tribunal* . . . ." (emphasis added).

The statutory requirements are: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 80 (2d Cir. 2012). Once the statutory requirements are

met, "a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004) (quoting *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997)).

However, a court's discretion is "not boundless," and must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 84 (quoting *In re Metallgesellschaft*, 121 F.3d at 79). The Second Circuit has identified the following four discretionary factors to aid district courts in determining whether to grant § 1782 applications: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

In *NBC v. Bear Stearns*, 165 F.3d 184 (2d Cir. 1999), the Second Circuit directly held that "an arbitral body established by private parties" was not a "foreign tribunal" for the purposes of § 1782. The Second Circuit looked to the legislative history and purpose of the 1964 revisions to § 1782 for guidance. *Id.* at 188-89. After examining the legislative history, the Second Circuit noted that it was "apparent in context that the authors of those reports had in mind only governmental entities," and concluded that the "absence of any reference to private dispute resolution

proceedings such as arbitration strongly suggests that Congress did not consider [private arbitration proceedings] in drafting the statute." *Id.* at 189 (citing H.R. Rep. No. 88-1052 at 9 (1963); S. Rep. No. 88-1580 at 3788 (1964)).The Court also noted that policy considerations such as efficiency and cost effectiveness in private arbitration proceedings would likely be compromised if the broad-ranging discovery permitted in federal court proceedings were permitted in private arbitration under section 1782. *Id.* at 190-91. Finally, the Court stated that if no provision for extensive discovery had been made in the parties' arbitration contract, neither party should be "deprived of its bargained-for efficient process" by the other party's "tactical use" of discovery pursuant to § 1782. *Id.* at 191. *NBC* has been the law in this Circuit ever since.

In 2004, the Supreme Court, acting in a context that did not involve the issue decided in *NBC*, cited – in a footnote that was itself dictum – a law review article from 1965 that espoused the view that arbitrations should be included within the scope of § 1782. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 248 n.1 (2004). Beyond that single, casual reference, there was nothing in *Intel* that even referenced whether private arbitrations are subject to §1782. Nevertheless, following *Intel,* there have been several decisions from district courts within the Second Circuit on the exact issue decided in *NBC*, two of which took the position that *Intel* had overruled *NBC.*[2] However, as discussed below, the better analyzed (and most recent) decisions on the issue have held that a foreign private arbitration is not a 'foreign or international tribunal' under the statute and that *NBC* remains good law.

In *In Re Application of Hanwei Guo*, No. 18-MC-56, 2019 WL 917076 (S.D.N.Y. Feb. 25, 2019), the court held that *Intel* did not abrogate *NBC*, and accordingly, the court denied the

[2] *See In re Children's Inv. Fund Found. (UK)*, 2019 WL 400626 (S.D.N.Y. Jan. 30, 2019); *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 521-22 (S.D.N.Y. 2016).

application. The *Hanwei* court reasoned that a district court must follow Second Circuit precedent "'unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.'" *Id.* at *5 (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015)); *see also Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (noting that district courts and the Second Circuit itself are "required to follow" a Second Circuit decision, even if it is in "tension" with subsequent Supreme Court precedent, "unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision"). The *Hanwei* court went on to note that that "*Intel*'s dictum is not even binding" and that there "is no basis to conclude that the Supreme Court's decision 'so undermines' *NBC*'s reasoning as to render its overruling 'almost inevitabl[e].'" *Hanwei*, 2019 WL 917076, at * 5. The reasoning of *Hanwei* is unassailable.

Indeed, that reasoning was adopted and amplified in *In re Petrobras Securities Litigation,* 393 F. Supp. 3d 376, 384-85 (S.D.N.Y. 2019), in which Judge Rakoff rejected the argument that *Intel* had abrogated *NBC*, and detailed at length the reasons that argument was incorrect. The court expressly noted that while two district court cases decided subsequent to *Intel* held that *Intel* had overruled *NBC*, they were incorrectly decided, and explained with detailed citations and analysis the reasons *Intel* could not reasonably be interpreted as abrogating *NBC. Id.* at 385. The *Petrobras* court reasoned:

> . . . <u>NBC</u> remains good law. To begin with, the Court is doubtful that a passing dictum in a Supreme Court opinion — taken, moreover, out of its context — is sufficient to abrogate an extensively-reasoned and directly on-point Second Circuit precedent. <u>See</u> <u>Monsanto v. United States</u>, 348 F.3d 345, 351 (2d Cir. 2003) (stating that district courts are "required to follow" on-point Second Circuit precedent "unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its

> equivalent) or is rejected by a later Supreme Court decision").
>
> More importantly, it is far from clear that the quotation referencing arbitral tribunals in Intel even casts doubt on the holding of NBC. Recall that NBC held that arbitral bodies created by governments or intergovernmental agreements are "tribunals" for the purposes of § 1782, but that arbitral bodies created by private parties are not. 165 F.3d at 188-90. The quote in Intel from Professor Smit's 1965 article, 542 U.S. at 258, 124 S.Ct. 2466, simply says that "arbitral tribunals" are within the scope of § 1782, not that private arbitral tribunals are. Professor Smit's explanation, therefore, is not inconsistent with NBC, because the author may only have been referring to arbitral tribunals created by governments and intergovernmental agreements. This is not only a plausible reading of his words, but is in fact probably what he meant, given his other writing on the topic[3]. …When he wrote the words that the Supreme Court would later quote, Professor Smit seems to have believed that § 1782 did not apply to private arbitral bodies. It is implausible, then, to read the Supreme Court's approving quotation of him as an endorsement of the opposite view.

*Id.* at 385-86.

Thus, the *Petrobas* decision concluded that (a) there was no reasonable basis for the conclusion that *Intel* had abrogated *NBC* and (b) the district courts in the Second Circuit are required to continue to adhere to that decision.

Finally, in *In Re Ex Parte Application of China Petrochemical Development Corporation*, No. 17-MC-00157, 2017 WL 10841339 (D. Conn. Nov. 28, 2017), the district court in Connecticut reasoned that unless *Intel* abrogated *NBC*, the court could not grant discovery in connection with a private foreign arbitration. The district court then held that *Intel* did not abrogate *NBC*, and adhered to the holding in *NBC* in denying the application for discovery that would have been used in a foreign private arbitration.

---

[3] The citation in *Intel* was to a 1965 law review article also authored by Professor Smit. As the *Petrobas* decision noted, Professor Smit wrote another law review article in 1962, two years before Congress revised the statute, in which he expressed the view that "an international tribunal owes both its existence and its powers to an international agreement." 165 F.3d at 190 (quoting Hans Smit, *Assistance Rendered by the United States in Proceedings Before International Tribunals*, 62 Colum. L. Rev. 1264, 1267 (1962)), thereby excluding private arbitrations from the ambit of the Statute.

In short, while there is authority for the proposition that a district court has authority to grant relief provided for in 28 U.S.C. § 1782 in the context of a foreign private arbitration, the better supported authority is that *NBC* remains good law and a court lacks authority to grant such an application in connection with a purely private foreign arbitration. Accordingly, here, where the proceeding at issue is a private arbitration to be conducted in Italy, the Court lacked authority to grant the Petitioners' application and the Order should be vacated.

**B. The Discretionary Factors Favor the Movants**

As noted previously, even if the Statute authorized the issuance of an order to conduct discovery in connection with a foreign private arbitration, the relief remains subject to the Court's discretion. Specifically, the Court should consider "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).[4]

In the instant case, the discovery requested in the Petition and granted in the Order would permit discovery of the Movants despite the fact that the parties' own agreement, *see* Gray Cert., Exhibit C, does not provide for any such discovery as of right. If the parties themselves have not

[4] The first and second discretionary factors are inapplicable because there is no 'foreign tribunal' under the Statute. If the private foreign arbitration were a 'foreign tribunal' (which it is not), both the first and second factors would militate in favor of the Movants. The private arbitration provided for in the By-Laws does not permit discovery as of right; ergo, even were the Movants parties to the arbitration, they would not likely be subject to discovery. And a private foreign arbitration does not respond to requests for U.S. 'federal-court judicial assistance', *a fortiori*, the second factor would also favor the Movants.

provided for discovery, there is little reason that non-parties, such as the Movants, should be required to do so.

Moreover, the Italian civil rules do not routinely provide for discovery in court cases, and even where a court orders discovery, the party (or non-party) subject to the order may decline subject only to the imposition of a fine of up to 1,500 euros.[5] *See* English Translation of Italian Code of Civil Procedure, Art. 118 (cited in footnote 5 infra). And, since those civil rules are, by private agreement, applicable to the private arbitration, there will almost certainly be no discovery in the arbitration. As set forth in the third discretionary factor, the Court should consider whether the application is an attempt to circumvent restrictions on proof gathering, such as those provided in the By-Laws and the Italian rules of civil procedure. The Petitioners are seeking discovery to which they are not entitled under the private agreement of the parties, and this factor militates in favor of the Movants.

Finally, the discovery requested is, under the circumstances, intrusive and unduly burdensome. As the Second Circuit has noted, "[o]rdinarily, because commercial arbitration is a creature of contract, only the parties to the arbitration contract are bound to participate." *NBC*, 165 F.3d at 186-87; *see also AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to

---

[5] Article 118 of the Italian Code of Civil Procedure (the "CPC"), provides:

> "*Order for inspection of persons and things.* The Court may order a party to the proceedings or a third party to consent to the inspection of their body or a thing in their possession insofar as the inspection is necessary for the ascertainment of the facts of the case, and provided that the inspection is carried out without causing serious harm to the requested party or the third party, and enforcement thereof does not result in a breach of one of the duties of secrecy set forth by Articles [200] and [201] of the Code of Criminal Procedure. If the requested party refuses to comply with an order of inspection without cause, the Court may draw adverse inferences against that party pursuant to Article 116.2.3. If the requested third party refuses to comply with an order for inspection, that third party shall be ordered to pay a fine varying from Euro 250.00 to Euro 1.500."

arbitration any dispute which he has not agreed so to submit."). Indeed, the Supreme Court has similarly observed "[t]he popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness – characteristics said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure." *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 280 (1995) (advantages of arbitration are that it is "usually cheaper and faster than litigation; . . . can have simpler procedural and evidentiary rules; . . . normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties") (quoting H.R. Rep. No. 97–542, at 13 (1982), U.S. Code Cong. & Admin. News 1982 at 765, 777)).

Here, where the parties have spared themselves the costs and burdens of discovery through their agreement, those costs and burdens should not be shifted to a party that is not even involved in the potential arbitration. Opening the door to this type of discovery could undermine one of the significant advantages of arbitration, and thus arguably conflict with the strong federal policy favoring arbitration as an alternative means of dispute resolution. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25-26 (1991); *Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998).[6] Surely, it would be unduly burdensome, harassing and intrusive to require the Movants to respond to discovery that the parties to the By-Laws do not themselves have to endure.

On balance, the discretionary factors strongly favor the Movants.

---

[6] Broad discovery in connection with foreign arbitration proceedings would stand in stark contrast to the limited evidence gathering provided in 9 U.S.C. § 7 for proceedings before domestic arbitration panels.

## CONCLUSION

For the foregoing reasons, the Order should be vacated and the subpoenas issued by the Petitioners should be quashed.

Dated: February 5, 2020

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: s/ Cory Mitchell Gray
Cory Mitchell Gray
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
*Attorney for Movants*