UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE APPLICATION OF FIMI-FINANZIARIA
IMMOBILIARE ITALIA S.R.L. and FINAB 43
S.R.L. IN LIQUIDAZIONE,

                              Petitioners,

For an Order to Conduct Discovery for Use in a
Foreign Proceeding.
-----------------------------------------------------------x

19-mc-584 (PKC)

OPINION
AND ORDER

CASTEL, U.S.D.J.

        This Court granted an ex parte application by FIMI-Finanziaria Immobiliare Italia S.R.L. and FINAB 43 S.R.L. in Liquidazione (collectively, "petitioners") to take discovery for use in a foreign proceeding. 28 U.S.C. § 1782. Petitioners seek documents and testimony from corporate entities 400 Fifth Avenue Corp., 400 Fifth Mezz LLC, 400 Fifth Realty, LLC, 400 Fifth Management, LLC, 400 Fifth Hotel Group, LLC, 400 Fifth Restaurant Group, LLC, and Bizzi & Partners Development LLC ("Bizzi LLC"), and from individuals Giuseppe Rossi, Andrus Laurits, and Steven Della Salla (collectively, "respondents"). (See Doc 1.) At the time of their application, petitioners were preparing to commence an arbitration in Italy (the "Italian Arbitration"), in which petitioners would seek damages for alleged breaches of fiduciary and other duties owed to them arising from a real estate development project in Manhattan.

        Respondents have moved to quash two subpoenas: a subpoena ad testificandum served on Steven Della Salla, and a subpoena duces tecum served on Bizzi LLC.[1] (Gray Decl. of

---

[1] The Court notes that respondents' submissions refer to the subpoena served on Bizzi LLC as a subpoena ad testificandum. However, this subpoena is one for "documents, information, or objects or to permit inspection of premises in a civil action," and does not seek testimony. (See Doc 14, Ex. B.)

Feb. 5, 2020 (Doc 14), Ex. B.)  Respondents contend that petitioners' section 1782 application did not satisfy the mandatory requirements of the statute because the Italian Arbitration is a private arbitration, and therefore does not meet the "foreign or international tribunal" requirement.  The Court held oral argument on this motion on July 23, 2020.  For the reasons set forth below, respondents' motion will be granted.

BACKGROUND

Petitioners are shareholders of an Italian holding company, 400 Fifth Avenue Holding SpA, which was created for the purpose of developing real estate in Manhattan. (Ugolini Decl. of Dec. 19, 2019 (Doc 5) ¶ 5.)  The underlying dispute stems from alleged breaches of fiduciary and other duties by members of the Board of Directors and the Board of Statutory Auditors that resulted in, inter alia, petitioners' loss of their investment in the holding company.  (Id.)

The 400 Fifth Avenue Holding SpA bylaws provide that disputes between shareholders and the company and/or its directors "shall be referred to the judgment of a Sole Arbitrator."  (Doc 14, Ex. C.)  The arbitrator is to be appointed by the President of the Court of the place where the company's registered office is located, which is in Milan.  (Id.; Ugolini Supp. Decl. (Doc 19) ¶ 3.)  Except as otherwise provided in the bylaws, the Italian Code of Civil Procedure "with regard to ritual arbitration" will apply to this arbitration.  (Doc 14, Ex. C; Doc 19 ¶ 2.)

In their section 1782 application, petitioners represented that they anticipated bringing the Italian Arbitration against multiple defendants; respondents were not among them. (Doc 5 ¶¶ 6-7.)  Respondents are entities that participated in the real estate development project, and individuals who were purportedly directors and officers of these entities during the relevant

time period.  (Id. ¶¶ 7, 10.)  All respondents maintain an office located at 55 East 59th Street, 24th Floor, New York, NY 10022.  (Id. ¶ 7.)

DISCUSSION

  A.  <u>The Mandatory and Discretionary Section 1782 Factors</u>

A district court may, "upon the application of any interested person," order a person within its jurisdiction to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ."  28 U.S.C. § 1782(a).  A section 1782 applicant must satisfy three mandatory factors by demonstrating that "'(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.'"  <u>Mees v. Buiter</u>, 793 F.3d 291, 297 (2d Cir. 2015) (quoting <u>Brandi-Dohrn v. IKB Deutsche Industriebank AG</u>, 673 F.3d 76, 80 (2d Cir. 2012)); <u>accord</u> <u>In re Accent Delight Int'l Ltd.</u>, 869 F.3d 121, 128 (2d Cir. 2017).

If the applicant satisfies the mandatory factors, the district court then weighs four discretionary factors listed in <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 264-65 (2004).  "These are: (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether

the request is 'unduly intrusive or burdensome.'" Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264-65).

The Court's exercise of discretion "'is not boundless,'" and must be guided by the goals of "'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Mees, 793 F.3d at 297-98 (quoting Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83-84 (2d Cir. 2004)).

B. Petitioners Do Not Satisfy the Mandatory Section 1782 Factors Because the Italian Arbitration is a Private Arbitration

At issue here is whether the Italian Arbitration will proceed before a "foreign or international tribunal" within the meaning of section 1782. Respondents contend that the Italian Arbitration is in fact a private commercial arbitration to which this Court's authority to grant an application for discovery pursuant to section 1782 does not extend. The Court agrees.

In NBC v. Bear Stearns & Co., 165 F.3d 184, 190 (2d Cir. 1999), the Second Circuit held that section 1782 covers "governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies . . . . [and] that Congress did not intend for that statute to apply to an arbitral body established by private parties." The arbitration at issue in NBC arose from the parties' agreement that "provided that any disputes would be resolved through private commercial arbitration administered by the International Chamber of Commerce ("ICC"), a private organization based in Paris, France, under ICC rules . . . ." Id. at 186.

A few years later, the Supreme Court decided Intel Corp., 542 U.S. at 246 ("Intel"), which addressed the "authority of federal district courts to assist in the production of evidence for use in a foreign or international tribunal." The underlying dispute in Intel stemmed

from respondent Advanced Micro Devices' complaint filed with the Directorate-General of the Commission of the European Communities, alleging antitrust violations by Intel.  Id. at 250.  Addressing the issue of whether the assistance sought came within "the specification 'for use in a foreign or international tribunal,'" the Intel Court concluded that the "European Commission, to the extent that it acts as a first-instance decisionmaker," was within the "ambit" of section 1782(a).  Id. at 257-58.  In reaching this conclusion, the Court cited, in dicta, the legislative history of the revised statute, and a 1965 law review article by Hans Smit, in which Smit stated: "The term 'tribunal' embraces all bodies exercising adjudicatory powers, and includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts."  Hans Smit, International Litigation Under the United States Code, 65 COLUM. L. REV. 1015, 1026 n.71 (1965); Intel, 542 U.S. at 258 (citing the same).

The Second Circuit recently held that NBC remains good law after Intel.  In re Guo, __ F.3d __, 2020 WL 3816098, at *5 (2d Cir. July 8, 2020) (hereinafter, "Guo").  In Guo, the Second Circuit noted that "the question whether foreign private arbitral bodies qualify as tribunals under § 1782(a) was not before the Intel Court," and further, that the quoted language in dicta "does not necessarily encompass private tribunals . . . ."  Id.

In Guo, the Second Circuit affirmed Judge Furman's denial of a section 1782 request for discovery in aid of proceedings before the China International Economic and Trade Arbitration Commission ("CIETAC").  Id. at *1. Adopting a "functional approach . . . consider[ing] a range of factors, including the degree of state affiliation and functional independence possessed by the entity, as well as the degree to which the parties' contract controls the panel's jurisdiction," the Court of Appeals concluded that the CIETAC arbitration

was outside the scope of section 1782. Id. at *6. Judge Livingston summarized the inquiry as "whether the body in question possesses the functional attributes most commonly associated with private arbitration." Id. Applying the non-exclusive factors found in Guo to the instant case, the Court concludes that the Italian Arbitration is a private arbitration beyond the scope of section 1782.

        1.        State Affiliation. As to the first factor of state affiliation, the question is "the extent to which the arbitral body is internally directed and governed by a foreign state or intergovernmental body." Id. at *7. Apart from the selection of an arbitrator by the President of the Court of Milan, see infra, there is no affiliation between the arbitrator or the arbitration and the Italian government or any state-related entity. The parties, not the court or any governmental entity, compensate the arbitrator. (Doc 19 ¶ 3.) Respondents have come forward with evidence that "the Italian courts will play no role in the anticipated arbitration proceeding unless a party challenges the arbitration award . . . ." (Barbàra Decl. (Doc 21, Ex. A) ¶ 3.) The independence of the arbitrator through the issuance of an award counsels against a finding that the Italian Arbitration is a "foreign or international tribunal" under section 1782.

        2.        State Authority to Intervene After an Award. The second factor is "the degree to which a state possesses the authority to intervene to alter the outcome of an arbitration after the panel has rendered a decision." Guo, 2020 WL 3816098, at *7. The parties' declarations offer competing views as to the ability of the parties to challenge the arbitrator's decision. Respondents submit the declaration of Federico Barbàra, a practicing lawyer in Milan, who declares that a challenge to an arbitration award may only be taken in limited circumstances: (1) nullity; (2) third-party opposition; or (3) revocation. (Doc 21, Ex. A ¶ 5.) "Nullity" arises from "material procedural or formal violations," including the arbitrator's

incapacity.  (Id. ¶ 6.)  "[T]hird-party opposition is only possible when the award materially prejudices the rights of a third party that did not participate in the arbitration, or if [] the arbitration award is the result of fraud or collusion to the detriment of the successors or creditors of the parties."  (Id. ¶ 7.)  Finally, "revocation" arises from three possible circumstances: "(a) when the award is the result of fraud by one of the parties or by the arbitrator; (b) when the award is based on evidence[] later recognized to have been forged; and (c) when decisive documents have been discovered after the award."  (Id. ¶ 8.)

An arbitrator's decision may be challenged for an error of substantive law, but also only in very limited circumstances.  Barbàra declares that there are three disjunctive bases for a challenge to an arbitration award based on an error of law: "(i) the parties have expressly agreed that the award may be challenged based on an error of law; or (ii) the error of law relates to a provision of Italian law that is not arbitrable; or (iii) would result in a breach of public policy." (Doc 21, Ex. A ¶ 9.)  Barbàra further declares that because the arbitration clause here does not contain any agreement by the parties to permit a challenge based on an error of law, no such challenge could proceed from the Italian Arbitration.  (Id. ¶¶ 11-12.)  But even if Barbàra is incorrect and a challenge may be based on one or more of these three grounds, it would not alter the result on this motion.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), a treaty to which 160 nations are signatories, provides: "[E]nforcement . . . may [] be refused if . . . (a) [t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country; or (b) [t]he recognition or enforcement of the award would be contrary to the public policy of that country."  New York Convention, art. 5.  Further, Second Circuit law permits an arbitration award to be set aside if it

was rendered in "manifest disregard of the law." Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks and citation omitted).  None of these circumstances, either under the New York Convention or Second Circuit law, have ever been held to convert a private arbitration into a governmental or state-sponsored arbitration.

    Petitioners' supplemental declaration of Cino Raffa Ugolini, an Italian lawyer, is vague.  (Doc 19.)  He opines that an "appeal" may be taken from an award, without disclosing the grounds that may be considered.  (Id. ¶ 4.)  He further states that the introduction of new evidence is "possible under various circumstances," without disclosing what those circumstances might be, e.g., extrinsic evidence of fraud by the arbitrator.

    Here, as in Guo, the possible review of the arbitrator's decision by an Italian court is insufficient to render the Italian Arbitration a proceeding before a "foreign or international tribunal" that comes within section 1782.  2020 WL 3816098, at *7.  That an Italian court may enforce the arbitration award or otherwise review the decision is not dispositive; if judicial review rendered a private arbitration a proceeding that would come within section 1782, this would "eras[e] the distinction drawn by NBC."  Id.

    3.  Source of the Arbitral Body's Jurisdiction.  The third factor to be considered under Guo is the nature of the arbitral body's jurisdiction.  Guo, 2020 WL 3816098, at *7.  Here, as in Guo, the arbitrator derives jurisdiction from an agreement between the parties, namely, the bylaws of 400 Fifth Avenue Holding SpA.  (Doc 14, Ex. C.)  Section 22 of the bylaws provides: "All disputes which should arise between the shareholders or between the shareholders and the company or between the company and/or the shareholders and/or the directors . . . shall be referred to the judgment of a Sole Arbitrator appointed by the President of the Court of the place where the company has its registered office . . . ."  (Id.)  Petitioners

contend that the bylaws are "not a negotiated agreement . . . ." (Doc 19 ¶ 6.) Bylaws, however, may bind parties to an arbitration provision contained therein. See, e.g., Jacobs v. U.S. Anti-Doping Agency, 04 cv 1163 (BSJ), 2004 WL 5003951, at *1-*2 (S.D.N.Y. May 19, 2004) (parties agreed that matter was arbitrable; US Track & Field bylaws provided for "binding arbitration" of disputes with athletes). There is no indication that 400 Fifth Avenue Holding SpA was required to include an arbitration clause in the bylaws, nor is there evidence that "any governmental grant of authority" dictates the arbitrator's jurisdiction over the Italian Arbitration. Guo, 2020 WL 3816098, at *7. Because the arbitrator's jurisdiction is a product of the consent of the parties, this further indicates that the Italian Arbitration is a private arbitration beyond the scope of section 1782.

        4.    Manner of Selection of Arbitrator. The fourth factor to be considered is whether the parties select their own arbitrator. Guo, 2020 WL 3816098, at *8. Here, unlike in Guo, the parties do not select an arbitrator, but one is assigned to them by the President of the Court of Milan. As the Second Circuit stated, "this factor is not determinative . . . ." Id. That the arbitrator is selected by the court does not convert a private arbitration into a "foreign or international tribunal" within the meaning of section 1782. Indeed, New York Civil Practice Law and Rules contains a provision for court-appointed arbitrators for private, contractual arbitrations under specified circumstances: "If the arbitration agreement does not provide for a method of appointment of an arbitrator, or if the agreed method fails or for any reason is not followed, or if an arbitrator fails to act and his successor has not been appointed, the court, on application of a party, shall appoint an arbitrator." NY CPLR § 7504. Court appointment of an arbitrator, standing alone, does not convert a private arbitration into a government-sponsored or state-related proceeding.

5. <u>Other Factors</u>.  Petitioners point to the bylaws' incorporation of the Italian Code of Civil Procedure governing the Italian Arbitration as a factor weighing in favor of this proceeding coming within section 1782.  (Doc 14, Ex. C; Doc 19 ¶ 2.)  The Court disagrees.  The bylaws provide: "For what is not provided by the present Section, the provisions . . . of the Code of Civil Procedure with regard to ritual arbitration shall apply."  (Doc 14, Ex. C.)  Petitioners have not shown that there is anything in the Italian Code regarding "ritual arbitration" that is in any way inconsistent with the attributes of a wholly private arbitration.

For these reasons, the Court concludes that the Italian Arbitration is a private arbitration that is not a "foreign or international tribunal" within the meaning of section 1782.  Because the Court concludes that petitioners do not satisfy the mandatory section 1782 factors, it does not reach the discretionary factors.

CONCLUSION

Respondents' motion to quash the subpoenas respectively issued to Steven Della Salla and Bizzi & Partners Development LLC is GRANTED.  The Clerk is respectfully directed to terminate the motion (Doc 13).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 3, 2020